IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**MARYLON BOYD, ET AL.,**

Appellant/Plaintiff,

**v.**

**CITY AND COUNTY OF SAN FRANCISCO, ET AL.,**

Appellee/Defendant,

No. 07-16993
[Pro Bono]

United States District Court Northern District of California C04-5459

**PETITION FOR PANEL REHEARING/REHEARING EN BANC**

JAY B. SHAPIRO
State Bar No. 224100

FORMAN & ASSOCIATES
4340 Redwood Highway, Suite E352
San Rafael, CA 94903
Telephone:  (415) 491-2310
Facsimile:  (415) 491-2313

Attorneys for Appellant Marylon Boyd

# TABLE OF CONTENTS

RULE 35 STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    I.    The Panel Opinion Conflicts with the One Other Circuit Court
        Decision to Consider the Same Issues. . . . . . . . . . . . . . . . . . . . . . . . 3

    II.    The Panel Misstates the Proper Analysis under FRE 404(b) . . . . . . 10

    III.    The Panel Opinion Blessing the Suicide-by-Cop Defense in Excessive
         Use of Force Cases Will Revolutionize How Such Cases Are
         Litigated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

i

# TABLE OF AUTHORITIES

<u>CASES</u>

*Graham v. Connor*,
490 U.S. 386 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*Palmquist v. Selvick*,
111 F.3d 1332 (7th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Sherrod v. Berry*,
856 F.2d 802 (7th Cir. 1988) (en banc). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sonnier v. Field*,
2007 WL 2155576 (W.D.Pa. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wallace v. Mullholland*,
957 F.2d 333 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7


<u>RULES</u>

Rule of Evidence 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule of Evidence 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule of Evidence 404. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Rule of Evidence 404(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*


<u>OTHER AUTHORITIES</u>

22 C. Wright & K. Graham,
Federal Practice and Procedure §5240 (2009). . . . . . . . . . . . . . . . . . . . . . . . 12

**RULE 35 STATEMENT**

Appellants Marylon Boyd, et al. respectfully seek rehearing or en banc review of the Panel's decision. The Panel decision upholding the admissibility of the suicide-by-cop evidence – an issue of first impression in this Circuit – conflicts with the treatment of such evidence by the only other Circuit to squarely consider the issue. *See Palmquist v. Selvick*, 111 F.3d 1332 (7th Cir. 1997). In addition, the Panel's cursory analysis appears to endorse an interpretation of FRE 404(b) that would permit the admission of evidence whose probative value depends on a character inference – exactly what the rule is meant to prohibit.

The Panel's treatment of the admissibility of suicide-by-cop evidence cannot stand because what it portends for future excessive force cases. The suicide-by-cop theory, if credited, makes relevant otherwise irrelevant character evidence that has an enormous capacity for unfair prejudice to the party against whom it is admitted. As such, the suicide-by-cop theory invites an end-run around Rules of Evidence 404 and 403. So powerful a tool is this theory that if the Panel's decision stands, this Circuit can expect to see the suicide-by-cop defense raised in most excessive force cases. As a result, the focus of excessive force cases will undergo a seismic shift from the reasonableness of the officer's use of force in light of the plaintiff's conduct at the time force was dispensed.

1

## BACKGROUND

Over Appellants' objections, the district court admitted the following evidence of Cammerin Boyd's conduct, all of which occurred before the events on Larch Way, none of which was known to Defendant Officer Paine:[1] (1) testimony of the 1993 high-speed chase resulting in the loss of Cammerin's legs; (2) testimony of Cammerin's criminal history, including the kidnapping attempts[2] and the likely term of incarceration he would have faced had he survived; (3) testimony regarding Cammerin's Oakland arrest, including his statements to police; (4) evidence that Cammerin had drugs in his system at the time he was shot; (5) evidence of prior lawsuits filed by Cammerin or by his mother on his behalf against law enforcement agencies; (6) evidence of the rap music lyrics and newspaper clipping found in Cammerin's car; and (7) Dr. Keram's expert testimony regarding the suicide-by-cop theory. Slip Op. at 10618.

_____

[1] Officer Paine heard the dispatch that a man had brandished a gun; the dispatch did not report, and Paine did not know, that the victim, Tatanika Hogan, had accused Boyd of trying to kidnap her. ER 255-57.

[2] The Panel states that the "two kidnapping attempts . . . provoked the high speed chase" by the San Francisco police (including Defendant Officer Paine). Slip Op. at 10621. This is incorrect. Only one of the alleged attempts – involving Ms. Hogan – was known to police at the time of the chase on May 5, 2004. The other – involving Ms. Williams – was entirely unknown until she came forward three months later and necessarily did not influence police conduct. SER 535:25-538:1.

2

With one minor exception, the Panel affirmed all the district court's evidentiary rulings. In so doing, the Panel rejected Appellants' arguments that the district judge had abused her discretion in admitting the evidence rather than excluding it under FRE 703, 404(b), and 403.[3]

## ARGUMENT

**I.  The Panel Opinion Conflicts with the One Other Circuit Court Decision to Consider the Same Issues.**

The Panel's decision conflicts with the only other Circuit to have analyzed in detail the admissibility of evidence to support a suicide-by-cop defense. *Palmquist v. Selvick*, 111 F.3d 1332 (7th Cir. 1997), involved the shooting death of Paul Palmquist by local law enforcement. Five hours before his death, Palmquist was pulled over for suspicion of drunk driving. After failing a sobriety test, a pat down revealed he possessed marijuana; he was charged with drug possession, DUI and traffic offenses, and then released. *Id*. at 1338. After returning home, Palmquist began screaming and ranting incoherently. Two

---

[3]  The Panel asserts that Appellants' counsel attempted to persuade it to apply *de novo* review of the decision to admit Dr. Keram's expert testimony. Slip Op. at 10618 n.3. Appellant's counsel disagrees: In the briefs and during oral argument, counsel freely admitted that abuse of discretion review applied; if counsel somehow gave the contrary impression, it was unintentional. Regardless of the ruling on this petition, Counsel respectfully requests that the Panel consider issuing an amended opinion deleting footnote 3.

3

neighbors would later testify that he acted this way to attract police presence. When the police arrived to investigate the disturbance, they found him screaming, acting bizarrely and brandishing a pipe and a fan blade. Rather than comply with police orders to surrender, he repeatedly attacked the police with his pipe and asked the police to kill him, saying they'd never take him alive. Eventually, the police shot and killed Palmquist. *Id.* at 1335-38.

Palmquist's estate brought a 1983 action alleging use of excessive force. "The jury heard conflicting accounts of the incident from 12 eyewitnesses and 3 experts." *Id.* at 1337-38. Several persons were prepared to testify about Palmquist's mental condition at the time he was killed. One friend said Palmquist had earlier told him he would provoke the police to kill him. Another friend said that Palmquist had been drinking more and lost his job, he seemed depressed and wanted to die. A third friend testified that Palmquist had been depressed and begun to mentally unravel. The third friend also said Palmquist was proud never to have received a DUI ticket and that it "may have been the last straw." A fourth friend recounted that Palmquist had said he could not deal with the world and wanted to be shot and killed by the police. A fifth friend said Palmquist was depressed over the recent death of his dog and had become a heavy drinker. Other neighbors had similar stories. *Id.* at 1338.

4

Before trial, Palmquist's estate opposed the admission of the friends' testimony as evidence that Palmquist desired to commit suicide-by-cop, which would corroborate Defendant Sgt. Selvik's claim that Palmquist had been the aggressor and insisted on ensuring his own death. *Id.* at 1339. The magistrate sided with plaintiffs on the ground that the defendants' evidence should be limited to "the officers' personal knowledge – their experiences and observations – during the morning in question." *Id.* Because Selvick knew nothing of "Palmquist's motivation and intent" at the time he shot him, the evidence was declared inadmissible under *Graham v. Connor*, 490 U.S. 386, 396 (1989) (holding that "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"). *Id.* at 1339.

The Seventh Circuit affirmed, holding that "evidence outside the time frame of the shooting is irrelevant and prejudicial." *Id.* "'Knowledge of facts and circumstances gained after the fact . . . has no place in the jury's post-hoc analysis of the reasonableness of the actor's judgment.'" *Id.* at 1139 (quoting *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) (en banc)).

*Palmquist* also recognized that admitting evidence of an excessive-force plaintiff's mental health problems would raise significant FRE 403 dangers. The

5

Court's discussion of *Wallace v. Mullholland*, 957 F.2d 333 (7th Cir. 1992), is

instructive. *Palmquist*, 111 F.3d at 1340. *Wallace* involved an excessive force

claim brought by a father and his schizophrenic son, Michael. The defendant

police officers sought to have an expert testify on the general nature of the son's

condition, and on "the likelihood that someone with that condition will act

aggressively." In affirming the district court's decision to exclude the expert

testimony, the *Wallace* court emphasized that the critical inquiry "was Michael's

*actual behavior*, and the way the police officers responded to it. The subject was

*not a psychiatric prediction about how someone like Michael might have*

*behaved*." *Wallace*, 957 F.2d at 336 (emphasis added). Using expert testimony on

the subject of Michael's mental state *together with evidence about Michael's*

*specific actions in the past, would have overemphasized the likelihood that*

*Michael acted in a manner that justified the officers' reaction. Id*. (emphasis

added). To hold otherwise would invite the jury to "conclude that a mentally

deficient plaintiff, regardless of his actual behavior, somehow 'asked for'

mistreatment at the hands of two policemen;" the risk of such unfair prejudice was

"greater than the value of such evidence to explain the police officers' use of

force." *Id.* Exclusion, the court emphasized, was mandated "where-as here-the

police officers had no specific knowledge of Michael's condition before they tried

6

to take him away."  The trial judge found, and we agree, that the forbidden

evidence would have shifted the focus from Michael's actions to his condition.

Only his actions can justify the use of force."  *Id.*  Accordingly, the expert

testimony on how someone with Michael's condition might have acted was

excluded under FRE 403.[4]

     The Panel's and the Seventh Circuit's treatment of suicide-by-cop evidence

could hardly be more different.  Again, in *Palmquist*, the evidence of the victim's

generally suicidal nature and specific desire to be killed by the police was

unequivocal – at least five people could testify to these specific characteristics,

leaving little doubt about his mental state at the time of death.  Presenting such

---

    [4]  Only one other federal court decision has analyzed the admissibility of
suicide-by-cop evidence in any depth.  *Sonnier v. Field*, 2007 WL 2155576
(W.D.Pa. 2007), was an excessive force lawsuit arising out of the high speed
pursuit and subsequent shooting death of Sonnier by Officer Field.  It was
undisputed that Officer Field filed the fatal shot but the parties vigorously
disputed whether the use of force was reasonable.  Field sought to admit evidence
of Sonnier's suicidal nature, including past suicide attempts, as well as expert
testimony on the subject.  Using reasoning reminiscent of *Palmquist*, *Sonnier* held
that evidence of past suicide attempts was inadmissible because they were
unknown to the police at the time of the pursuit.  Whatever the probative value of
this evidence would be "categorically outweighed by its potential prejudicial effect
under Rule 403."  *Id.* at *5.

    But as for testimony about Sonnier's "irrational and highly aggressive
actions towards police officers involved in pursuing and attempting to apprehend
him" – in other words, conduct known to the defendants from the day in question
– such evidence could be presented to the jury.  *Id.*

7

unassailable evidence of Palmquist's likely behavior at the time of his death would have proven enormously helpful to Defendant Selvik's case. Nevertheless, the Seventh Circuit upheld its exclusion because admitting it would have violated the teaching of *Graham v. Connor*, 490 U.S. 386, 396 (1989), and raised FRE 403 dangers that substantially outweighed competing probative value.

By contrast, what passed for evidence of Cammerin Boyd's suicidal intent – the alleged kidnappings, the incident with Oakland police three days before his death, the CHP chase from eleven years earlier that cost him his legs, *even begging the police not to shoot him* – had no apparent tendency to make him appear suicidal. What was apparent, and manifestly so, was the inflammatory nature of the evidence – *e.g.*, alleged kidnapping of two women, drug use, offensive rap lyrics, high speed chases with law enforcement – and the near certainty it would lead to a verdict based in part on the jurors' emotional response to Boyd's criminal acts rather than the testimony and physical evidence bearing on what he was actually doing at the time he was shot and killed.

The lower court and Appellees' concluded that *Palmquist* was distinguishable because the parties to this suit disputed what Boyd was doing at the time he was killed – reaching into the car (as Officer Paine said) as opposed to attempting to surrender. (Perhaps the Panel agreed, but it did not analyze

8

*Palmquist*.) Thus, evidence that Boyd was committing suicide-by-cop made Paine's version of events more likely. Slip Op. at 10620 ("In a case such as this, where what the officer perceived just prior to the use of force is in dispute, evidence that may support one version of evens over another is relevant and admissible.")

But Palmquist's conduct was also contested – Officer Selvik sought to admit evidence of Palmquist's suicidal intent to show he had been the aggressor during their conflict, intent on provoking deadly force, and thus was more likely to have acted in a way that justified excessive force. Not only would that evidence have strengthened Selvik's case, but the evidence was objectively credible and strong without the need for an expert curator (unlike here, where the so-called evidence of Cammerin's suicidal intent was dubious and non-intuitive). If one were assessing the relative probative value of the contested evidence in this case and in *Palmquist*, *Palmquist* would win hands-down. Nevertheless, the evidence was admitted in this case, and excluded in *Palmquist*. These two outcomes cannot be reconciled.

The readiest explanation for the different outcomes in *Palmquist* and the case at bar is that the appellate courts were reviewing lower court decisions that could have gone either way under the deferential abuse of discretion standard.

9

(Because the Panel did not discuss *Palmquist*, its view is unknown.) As explained below, however, even under the forgiving abuse of discretion standard, the Panel should have held that most if not all of the contested evidence was inadmissible under FRE 404(b).

## II. The Panel Misstates the Proper Analysis under FRE 404(b).

The Panel rejected Appellants' argument that nearly all of the challenged evidence was inadmissible under FRE 404(b). Slip Op. at 10624-25. The Panel's position appears to misapprehend the nature of the suicide-by-cop theory and the proper application of Rule 404(b) itself.

The suicide-by-cop theory is premised on propensity. In a suicide-by-cop situation, a person who hates police and is suicidal acts to provoke police into using lethal force against him. In other words, a person with a suicidal, police-hating propensity acts in accordance with those character traits to achieve his own death. Appellees introduced testimony on an array of acts and occurrences intended to demonstrate that Cammerin Boyd wanted to commit suicide (*e.g.*, looming prison sentence, brazen attempted kidnappings not far from police presence) and hated police (*e.g.*, rap lyrics expressing violence against police, the 1993 CHP chase that resulted in the loss of his legs). And relying on this character evidence, Dr. Keram, an expert in the field, told the jury she concluded

10

that Cammerin had acted in conformity with his suicidal character on the day he was shot and killed by the police by reaching into the car. That is a propensity inference, and represents the use of evidence that the Rules of Evidence forbid. *See* FRE 404 ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" on a particular occasion.)

The Panel rejected Appellants' argument, holding that "the admission of evidence in support of the suicide by cop theory falls within the large exception for otherwise inadmissible character evidence carved out in Rule 404(b). To the extent that being shot by the police was Cammerin's plan, intent, or motive, the evidence supporting the theory of suicide by cop is admissible." Slip Op. at 10625. It is unclear whether the Panel identifies "plan, intent or motive" merely as illustrations of recognized categories under 404(b) or to suggest that the contested evidence was actually admissible to prove these particular things. The Panel seems to suggest that so long as specific act evidence is offered to help prove that Boyd had a plan, an intent, or a motive to have the police kill him, that act evidence necessarily satisfies Rule 404(b). If that's the Panel's position, it's incorrect.

11

Professors Wright and Graham states the proper approach: "[C]ourts should examine the complete chain of inferences necessary to make the evidence of other [acts] relevant and admit or exclude the evidence on the basis of whether it is or is not offered to prove some conduct of the accused *and whether it does or does not require an inference as to his character*." 22 C. Wright & K. Graham, Federal Practice and Procedure §5240 (2009) (emphasis added) (hereinafter "Wright & Graham"). Put another way, a party cannot satisfy Rule 404(b) simply by stating that a prior act is offered to prove some conduct that falls within one of the 404(b) categories. Prior acts must be scrutinized to ensure their tendency to make a fact of consequence more likely does not depend on a character propensity inference.

Because the Appellees argued that the contested act evidence was admissible to prove "plan" under 404(b), and the Panel also endorses that view, Appellants focus on that argument here. "The justification for admitting evidence of other crimes to prove a plan is that this involves no inference as to the defendant's character. The other crime is admitted to show this larger goal rather than to show defendant's propensity to commit crimes. *This justification is plausible when there is some other evidence of the plan or when the existence of the plan is the obvious inference from the other crime*." Wright & Graham §5244 (emphasis added).

12

As a preliminary matter, the Panel must recall that Appellees introduced not a shred of direct evidence that Cammerin was suicidal. Unlike the witnesses in *Palmquist*, no one in this case testified that Cammerin ever spoke of being depressed or suicidal, no one testified of his seeming depressed or suicidal, and no one offered any psychology reports or other evidence that might indicate a history of such conditions. Therefore, Appellees were left to rely on acts or events that were uneasily cast as evidence of a suicidal plan.

Appellees argued that the May 2 Oakland incident was admissible to show that Boyd had a plan to commit suicide-by-cop. But for the Oakland incident to have any logical connection to what happened three days later in San Francisco, one must accept that the Oakland incident is itself evidence of Boyd's suicidal character and that because he acted suicidally then, he acted suicidally days later – the character-propensity inference Rule 404(b) forbids. Nor does the fact that the Oakland incident and the events of May 5 were similar – both allegedly involved Cammerin leading police on high-speed chases – recast the events as a plan. That Cammerin may have led police on a high speed chases on May 2 is not evidence his doing the same thing three days later was part of a plan (any more than a bandit's hold-up of a market in 2005 is evidence of his plan to rob one a few years

later); instead, this is evidence of propensity.[5]  *See id*. ("To be properly admissible under Rule 404(b) it is not enough to show that each crime was "planned" in the same way; rather, there must be some overall scheme of which each of the crimes is but a part.")

The kidnappings are easier to conceive of as part of a plan because they took place so soon before Cammerin's death.  But there's no discrete "other evidence" of a plan, and a plan to commit suicide-by-cop is hardly an "obvious inference" from the kidnappings themselves.  To divine a suicide plan, one must regard the kidnappings as evidencing some sort of death wish and then inferring that Boyd acted in accordance with that wish later on.  But that's the improper use of propensity to prove conduct.

It makes no sense to talk of the remaining evidence in terms of "plan." The 1993 CHP accident in which Boyd lost his legs was obviously not planned, much

_____

[5]  About the Oakland incident, the Panel states: "police assertions that Cammerin was acting erratically, taunting police and goading them to shoot him instead of following police commands, is made more probable by Cammerin's earlier statements to Oakland police."  Slip Op. at 10620.  It is debatable whether Cammerin's conduct in Oakland serves as a predictor of what he did three days later in the presence of different people in a different city, but the evidence is not admissible for that purpose.  The Panel's observation amounts to: evidence that Cammerin allegedly screamed at the Oakland police to kill him makes it more likely he acted similarly three days later on Larch Way; that is a character propensity inference – because he is someone who does X, he likely did X at a later date – that Rule 404(b) prohibits.

14

less part of a larger plan. Likewise, Boyd's looming prison sentence and his mother's litigation background cannot be characterized as part of a "plan" if the word is to maintain any semblance of its normally accepted meaning. Unlike a suicide note (for example), nothing in any of these pieces of evidence suggest an intentional scheme on Boyd's part.

In sum, the Panel's Rule 404(b) analysis is incorrect because the specific acts are relevant to prove Boyd's supposed intention to commit suicide-by-cop only if one makes the sort of character inference prohibited by the rule. The correct application of the Rule should have resulted in the exclusion of the contested suicide-by-cop evidence to prove Boyd's conduct at the time he was shot.

## III. The Panel Opinion Blessing the Suicide-by-Cop Defense in Excessive Use of Force Cases Will Revolutionize How Such Cases Are Litigated.

In their briefs, at oral argument, and now here, Appellants have stressed the two ways suicide-by-cop theory is fundamentally at odds with the Federal Rules of Evidence. The first, discussed above, is that using an after-the-fact suicide-by-cop diagnosis to prove conduct always depends on a character-propensity inference. This puts the theory directly at odds with FRE 404(b).

15

Second, the suicide-by-cop theory transforms acts or events with no logical and temporal relationship to later conduct into evidence that is probative of that particular conduct. The trial below illustrates the point too well. Absent suicide-by-cop, the fact that Cammerin's mother had filed the occasional lawsuit against law enforcement agencies had no conceivable bearing on any fact of consequence in this excessive force action. *See* Fed. R. Evid. 401. The same is true of the 1993 CHP incident that led to the loss of Cammerin's lower legs, the violent rap lyrics found in his car several weeks before his death, or even the alleged kidnappings that took place shortly before the police pursuit that culminated on Larch Way.

Yet, once the Defendants were allowed to present a suicide-by-cop defense, the relevance of these (and other) prior bad acts suddenly sprung to life. The previous lawsuits filed by Cammerin's mom were now probative of whether her son was reaching into a car several years later. And the CHP incident, eleven years hence, now somehow becomes probative of whether Cammerin was reaching into the car when he was shot on Larch Way. Before suicide-by-cop, even if one could conjure a theory of relevance for these acts and events, the probative value would have been so weak that their near-certain potential for causing unfair prejudice and issue would have mandated their exclusion under FRE 403. But in the context of suicide-by-cop, these disparate pieces of evidence provide important

16

support for the theory and thus are largely protected from exclusion regardless of their prejudicial valence. These considerations put the suicide-by-cop theory at direct odds with FRE 403.

Because it allows the defendant in an excessive force action to side-step FRE 403 and 404, suicide-by-cop theory makes a potentially powerful and intoxicating tool for defendants in an excessive force case. Indeed, the Panel's opinion, if allowed to stand, provides those defendants with an irresistible incentive to argue suicide-by-cop as a basis for presenting the jury with evidence it would otherwise never hear. It is important to recognize how easy it will be for defendants to raise the defense. As Dr. Keram insisted in this case, firing a gun at police officers demonstrates a desire to be killed by police. In fact, any attempt to resist arrest evidences one's suicidal intent. But a person need not even act to demonstrate suicidal character. Simply facing the prospect of a jail sentence also meets the criteria for suicidal intent. The test is so malleable that defendants in excessive force lawsuits will have no problem conjuring up a credible suicide-by-cop defense.

And given the ease with which such defenses will be put forth, plaintiffs in excessive force cases will find themselves – as Appellants did – focused on defending the victim's character rather than on proving the reasonableness of the

force based on the victim's actual conduct. In addition to disadvantaging the plaintiffs, the courts can expect more motions in limine and probably longer trials as parties and their experts joust over suicide-by-cop. Jurors, meanwhile, will have to sift through increasing amounts of inflammatory evidence with great potential for improper usage.

In sum, given that the Panel's opinion endorses a different approach to suicide-by-cop than the Seventh Circuit's *Palmquist* decision, rests on the questionable application of Rule 404(b), contains statements of law and fact that would benefit from clarification or correction, and will likely recast the way excessive force cases are litigated in this Circuit, the Panel's opinion should be reconsidered, either by the Panel itself or the Court sitting en banc.

## **CONCLUSION**

Appellants respectfully request the grant of their petition for rehearing or rehearing en banc.

Dated: September 4, 2009      Respectfully submitted,

By: s/ Jay B. Shapiro
        Jay B. Shapiro
        Counsel for Plaintiffs-Appellants
        Marylon Boyd, et al.

## CERTIFICATE OF COMPLIANCE

I certify that, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c) and 9th Circuit Rule 32-1, the attached petition for panel rehearing/rehearing en banc is proportionately spaced, has a typeface of 14 points or more, and contains 4,198 words.

Dated:  September 4, 2009            By:  s/  Jay B. Shapiro
                                          Jay B. Shapiro